**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CINDY MICHELLE HAHN, an individual,<br><br>                    Plaintiff,<br><br>          v.<br><br>CITY OF CARLSBAD, OFFICER J. KNISLEY, OFFICER KENYATTE VALENTINE, OFFICER KARCHES, CORPORAL GALANOS, OFFICER SEAPKER, and DOES 1 THROUGH 50,<br><br>                    Defendants. | Case No. 15-cv-2007 DMS (BGS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

     This case comes before the Court on Defendants' motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. The motions came on for hearing on June 9, 2017. Benjamin J. Meiselas appeared for Plaintiff. Golnar Jabbari Fozi, Daniel Stephen Modafferi, and Paul G. Edmonson appeared for Defendants. After considering the parties' briefs, oral argument, and the record before the Court, Defendants' motions are granted in part and denied in part.

/ / /

/ / /

/ / /

# I.

## BACKGROUND[1]

At 3:38 p.m. on July 31, 2013, Officer Kenyatte Valentine began to impound a vehicle for having expired registration tags. (Declaration of Kenyatte Valentine ("Valentine Decl.") ¶ 5.) The vehicle was parked on Beech Street, west of Garfield Street, in the City of Carlsbad. (*Id.* ¶¶ 5–6.) When Officer Valentine began to conduct an inventory search of the vehicle, Plaintiff approached him and asked him what was going on. (*Id.* ¶ 5; Notice of Lodgment ("NOL") in Opp'n to Mot., Ex. 1 at 10, 14–15.) Officer Valentine asked Plaintiff whether the vehicle belonged to her, and she responded, "No." (Valentine Decl. ¶ 5; NOL in Opp'n to Mot., Ex. 1 at 15.) The events that transpired thereafter are disputed. Plaintiff argues Officer Valentine told her to "mind your own fucking business" and called her a "bitch." (NOL in Opp'n to Mot., Ex. 1 at 15, 21.) In contrast, Defendants contend Plaintiff began yelling and swearing at Officer Valentine. (NOL in Supp. of Mot., Ex. 3 at 45; *id.*, Ex. 4 at 50–51.) Plaintiff eventually walked away and called the Carlsbad Police Department to complain about Officer Valentine. (*Id.*, Ex. 5 at 55.) She was immediately placed on hold. (*Id.*) When her friend Misty Cervantes pulled up in front of Plaintiff in a white Infinity SUV, Plaintiff hung up without filing a complaint and climbed into the front passenger seat. (*Id.* at 55–59.)

After getting the vehicle towed, Officer Valentine returned to his motorcycle when he observed the SUV Plaintiff was riding in proceeding northbound on Garfield Street. (Valentine Decl. ¶ 6.) Officer Valentine noticed Cervantes was driving without her seatbelt fastened. (*Id.*; NOL in Supp. of Mot., Ex. 6 at 71.) Based on that observation, Officer Valentine effectuated a traffic stop, and Cervantes pulled into a parking lot. (Valentine Decl. ¶ 6.) The parties also dispute the events

---

[1] Because the parties dispute the material facts of this case, the Court provides a brief summary of the case for background purposes only.

which transpired immediately following the traffic stop. The records show Plaintiff initially exited the vehicle from the passenger side and went to the rear of the SUV and opened up the rear hatch to retrieve registration and insurance cards. (NOL in Opp'n to Mot., Ex. 1 at 23–26; NOL in Supp. of Mot. at Ex. 1 at 5.) However, she became distracted and began to look for her son's clothing instead.[2] (NOL in Opp'n to Mot., Ex. 1 at 23–26; NOL in Supp. of Mot. at Ex. 1 at 6.) Subsequently, Plaintiff proceeded to the driver's side of the car, where Officer Valentine was standing. (NOL in Opp'n to Mot., Ex. 1 at 26, 28; NOL in Supp. of Mot. at Ex. 2 at 22–23.) Officer Valentine told Plaintiff, "Go sit on the curb or get in the car now." (NOL in Opp'n to Mot., Ex. 1 at 33; NOL in Supp. of Mot. at Ex. 2 at 23.) It is disputed whether Plaintiff complied with Officer Valentine's orders.

Officer Valentine then told Plaintiff that she was under arrest. (NOL in Opp'n to Mot., Ex. 1 at 37; Valentine Decl. ¶ 10.) The parties further dispute what transpired when Officer Valentine attempted to arrest Plaintiff. At some point during the encounter, Officer Valentine grabbed Plaintiff's wrists and swept her legs out from under her, causing her to fall to the ground. (NOL in Supp. of Mot., Ex. 2 at 33–36; *id.*, Ex. 5 at 62.) Plaintiff yelled for help. (NOL in Supp. of Mot., Ex. 1.) Subsequently, Officer Jody Knisley arrived on the scene and immediately knelt down besides Plaintiff. (*Id.*, Ex. 9 at 110–11.) Corporal Richard Galanos arrived on the scene as Officer Knisley ran to assist Officer Valentine.[3] (Declaration of Richard Galanos ("Galanos Decl.") ¶ 4.) To restrain Plaintiff, Officer Knisley "punched [Plaintiff] on the right side of the face by her right cheek bone" and "delivered one distraction knee strike to [Plaintiff's] right side." (NOL in Supp. of Mot., Ex. 8 at 100.) Plaintiff contends Officer Knisley administered further strikes to her head with

---

[2] The parties dispute whether Plaintiff retrieved the registration and insurance cards and handed them to Officer Valentine.

[3] Corporal Galanos conducted scene control during this incident. (Galanos Decl. ¶ 4.)

his fist.  (NOL in Opp'n to Mot., Ex. 1 at 48.)  Officers Valentine and Knisley eventually handcuffed Plaintiff and placed her in the back of a patrol car.[4]  Officers Karches and Seapker arrived on the scene after Plaintiff was in custody.

## II.

## LEGAL STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party has the initial burden of demonstrating that summary judgment is proper.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth."  *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The burden then shifts to the opposing party to show that summary judgment is not appropriate.  *Celotex*, 477 U.S. at 324.  The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  However, to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations.  *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986).  Instead, it must designate specific facts showing there is a genuine issue for trial.  *Id.*; *see also Butler v. S.D. Dist. Atty's Off.*, 370 F.3d 956, 958 (9th Cir. 2004) (stating if defendant produces enough evidence to require plaintiff to go beyond pleadings, plaintiff must counter by producing evidence of his own).  More than a "metaphysical doubt" is required to

---

[4] Plaintiff states one of the officers tightened the handcuffs on her wrists to the extent that "[she] couldn't even feel [her] hand."  (NOL in Opp'n to Mot., Ex. 1 at 51.)

. 15-cv-2007 DMS (BGS)

establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**III.**

**DISCUSSION**

**A.    § 1983 Claim**

In her first claim, Plaintiff alleges Defendant officers, acting under the color of law, violated her Fourth Amendment rights to be free from unlawful arrest, malicious prosecution, and excessive force. Defendants move for summary judgment on all claims.

**1.    Unlawful Arrest and Malicious Prosecution**

To succeed on claims for false arrest and malicious prosecution, a plaintiff must show the defendants lacked probable cause to arrest and to prosecute her. *See Dubner v. City & Cty. of S.F.*, 266 F.3d 959, 964 (9th Cir. 2001) ("A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification."); *Lacey v. Maricopa Cty*, 693 F.3d 896, 919 (9th Cir. 2012) (setting forth elements of malicious prosecution claim under § 1983). "Probable cause exists when there is a fair probability or substantial chance of criminal activity." *United States v. Bishop*, 264 F.3d 919, 924 (9th Cir. 2001) (citing *Illinois v. Gates*, 462 U.S. 213, 235 (1983)).

Defendants argue collateral estoppel precludes Plaintiff from re-litigating the issue of probable cause because the state court already determined there was probable cause to arrest Plaintiff. Defendants explain the state court found sufficient evidence to bind over Plaintiff for trial and set bail on charges including resisting arrest under California Penal Code § 148, and resisting arrest with force and violence under California Penal Code § 69. "When an individual has a full and fair opportunity to challenge a probable cause determination during the course of the prior proceedings," collateral estoppel prevents her "from relitigating the issue in a subsequent § 1983 claim." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th

– 5 –

Cir. 2004). However, collateral estoppel does not apply "'where the plaintiff establishes that the arresting officer lied or fabricated evidence presented at the preliminary hearing.'" *Wige v. City of L.A.*, 713 F.3d 1183, 1186 (9th Cir. 2013) (quoting *McCutchen v. City of Montclair*, 73 Cal. App. 4th 1138, 1147 (Cal. Ct. App. 1999)). When an officer "misrepresents the nature of the evidence supporting probable cause and that issue is not raised at the preliminary hearing, a finding of probable cause would not bar relitigation of the issue of integrity of the evidence." *McCutchen*, 73 Cal. App. 4th at 1147. "To rebut the presumption [of probable cause], a plaintiff must point to something more 'than the fact that the officers' reports were inconsistent with [his] own account of the incidents leading to his arrest." *Carino v. Gorski*, No. 07-455-PHX-NVW, 2008 WL 4446706, at *6 (D. Ariz. Sept. 30, 2008) (quoting *Blankenhorn v. City of Orange*, 485 F.3d 463, 483 (9th Cir. 2007)).

Here, Plaintiff does not dispute the parties litigated the issue of probable cause in the state court proceeding. Rather, she argues collateral estoppel is inapplicable because there are triable issues of fact as to whether Officer Valentine failed to disclose material evidence at the preliminary hearing. Plaintiff, however, does not point to any evidence of fabrication other than the assertion that Officer Valentine's testimony was inconsistent with her account of the incident, which is insufficient to preclude summary judgment. *See Sloman v. Tadlock*, 21 F.3d 1462, 1474 (9th Cir. 1994) (stating that to show evidence of fabrication, a plaintiff must show evidence "other than the fact that the officers' reports were inconsistent with [his] own account of the incidents leading to his arrest."). Officer Valentine's testimony at the preliminary hearing reflected the same information stated in his investigation report. *See Fenters v. Chevron*, No. CV-F-05-1630 OWW DLB, 2010 WL 5477710, at *26 (E.D. Cal. Dec. 30, 2010) (finding that collateral estoppel applied to prevent re-litigation on probable cause because plaintiff failed to show fabrication as "Defendant Hutton's testimony at the preliminary hearing was the same information

that was reflected in his written investigation report."). The fact that Officer Valentine testified regarding the incident in a manner that differed from Plaintiff's perception does not amount to the type of wrongful conduct that rebuts the presumption of probable cause. *See Awabdy*, 368 F.3d at 106 (the presumption can be rebutted through proof that a police officer "improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings."). Consequently, Plaintiff is collaterally estopped from re-litigating the issue of probable cause. Defendants' motion for summary judgment is therefore granted with respect to the unlawful arrest and malicious prosecution claims.

### 2. Excessive Force

The Fourth Amendment prohibition against unreasonable seizures permits law enforcement officers to use only such force to effect an arrest as is "objectively reasonable" under the circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Because the Fourth Amendment test for reasonableness is inherently fact-specific, *see Chew v. Gates*, 27 F.3d 1432, 1443 (9th Cir. 1994) (citing *Reed v. Hoy*, 909 F.2d 324, 330 (9th Cir. 1989)), it is a test that escapes "mechanical application" and "requires careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396; *Fikes v. Cleghorn*, 47 F.3d 1011, 1014 (9th Cir. 1995). In determining whether a particular use of force was reasonable, courts consider: "(1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect actively resisted arrest or attempted to escape." *S.B. v. Cty. of S.D.*, No. 15-56848, 2017 WL 1959984, at *4 (9th Cir. May 12, 2017) (citing *Graham*, 490 U.S. at 396). Of all these factors, the "most important" one is "whether

. 15-cv-2007 DMS (BGS)

the suspect posed an immediate threat to the safety of the officers or others." *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013) (quoting *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (internal quotations omitted)).

### a.    Officers Karches and Seapker

Defendants move for summary judgment on the excessive force claim against Officers Karches and Seapker.  Defendants contend these officers were not on scene when Plaintiff was arrested.  Plaintiff does not oppose this aspect of Defendants' motion.  Because Officers Karches and Seapker did not participate in the alleged constitutional deprivation, Plaintiff's claim against them fails.  Accordingly, Officers Karches and Seapker are entitled to summary judgment on the excessive force claim.[5]

### b.    Officer Valentine

Defendants, relying almost entirely on their version of the incident, argue the undisputed facts show Officer Valentine did not use excessive force against Plaintiff. They contend Plaintiff exited the vehicle during a traffic stop without permission and refused to return to the car or sit by the curb despite Officer Valentine's orders. When Officer Valentine grabbed Plaintiff's wrists to place her under arrest for obstructing an officer, Plaintiff resisted by pulling her arms away and running away. Officer Valentine pursued Plaintiff and grabbed both of her wrists to handcuff her, but she again resisted by slipping her wrists out of his grip.  In order to restrain Plaintiff, Officer Valentine tripped Plaintiff, causing her to fall on the ground, and then held her left hand down and draped his right leg over her body while waiting for backup.  Defendants contend Officer Valentine's use of force was reasonable

---

[5] For similar reasons, Defendants' motion for summary judgment on the remaining claims against Officers Karches and Seapker is granted.  At oral argument, Plaintiff's counsel raised for the first time that Officers Karches and Seapker failed to give aid to Plaintiff when she was in custody.  The TAC, however, does not expressly include this allegation.  Given the absence of notice to Defendants, Plaintiff's belated attempt to add such a claim is rejected.

under these circumstances.

Plaintiff's account of the incident differs significantly, thereby raising genuine issues of material fact regarding whether Officer Valentine used excessive force. First, Plaintiff correctly notes she was arrested for a nonviolent and relatively minor offense. Second, Plaintiff contends a reasonable jury could conclude she posed no immediate threat to Officer Valentine's safety during the encounter. Wearing sandals and a terry cloth dress over her bikini, Plaintiff contends she was in no position to resist, did not threaten Officer Valentine, and complied with Officer Valentine's orders by walking to the curb with her hands in the air. Third, Plaintiff disputes she evaded arrest by running away. Once Officer Valentine stated she was under arrest, Plaintiff claims she turned around with her hands remaining in the air, asking "For what?" Officer Valentine, without warning, allegedly lunged at Plaintiff and swept her legs out from under her, causing her to fall to the ground. Plaintiff contends Officer Valentine then "deliberately threw [her] body up in the air to hit [her] head straight first on the ground." (NOL in Opp'n to Mot., Ex. 1 at 45.) Once she fell again on the ground, Officer Valentine allegedly inflicted pain by exerting pressure on her body with his knee.

Because reasonableness of force is necessarily fact-specific, it is often a question that escapes resolution on summary judgment. *See Chew*, 27 F.3d at 1440 ("Because questions of reasonableness are not well-suited to precise legal determination, the propriety of a particular use of force is generally an issue for the jury."). Viewing the facts most favorably to Plaintiff, as the Court must on the present motion, Officer Valentine lunged at Plaintiff without any provocation on her part and caused Plaintiff to fall on the ground. According to Plaintiff, this occurred even though she was complying with his commands. A reasonable jury viewing the circumstances in this light could conclude that Officer Valentine's use of force was not objectively reasonable, and therefore, excessive. Accordingly, Defendants' motion for summary judgment on the excessive force claim against Officer

. 15-cv-2007 DMS (BGS)

1     Valentine is denied.

2           **c.**      **Officer Knisley**

3        Defendants contend Officer Knisley is entitled to summary judgment on the

4 excessive force claim because his actions were objectively reasonable under the

5 circumstances. When Officer Knisley arrived on the scene, Defendants argue he

6 saw Officer Valentine on the ground with Plaintiff and believed Plaintiff posed a

7 physical danger to Officer Valentine. According to Officer Knisley, Plaintff was

8 resisting arrest by flailing her feet and her right hand. Therefore, he immediately

9 got on the ground to put handcuffs on Plaintiff, but Plaintiff continued to resist by

10 grabbing and dislodging his microphone and attempting to punch him in the face. In

11 order to restrain Plaintiff, Officer Knisley used "distraction blows" and struck her

12 once on the face with a clenched fist and once on the side of her leg with his knee.

13        In opposition, however, Plaintiff has provided sufficient evidence to

14 demonstrate the existence of genuine issues of material fact regarding the

15 circumstances of the event and the amount of force Officer Knisley used to effectuate

16 the arrest. Plaintiff has offered evidence showing she did not pose a threat to Officer

17 Knisley or actively resist arrest. Plaintiff testified during deposition that when

18 Officer Kinsley arrived at the scene, Plaintiff did not flail her hands or feet, but

19 remained still on the ground. Plaintiff asserts she "was not attempting to throw

20 Officer Valentine off of her nor was she kicking her legs violently attempting to

21 break free from Officer Valentine's grasp." (NOL in Opp'n to Mot., Ex. 7, at 184.)

22 When Officer Knisley approached her, Plaintiff reached out her right arm towards

23 him, stating "Help me." (*Id.*, Ex. 1, at 47.) Yet, according to Plaintiff, Officer

24 Knisley took Plaintiff's arm and twisted it backwards, and then delivered multiple

25 blows to her head and body using his fist and knee.

26        In addition, Plaintiff has submitted a report from Scott DeFoe, a police

27 practices expert, who opined that:

28        Officer Knisley used unreasonable and excessive force when he

initially punched Mrs. Cindy Michelle Hahn in the face with his right hand in violation of Carlsbad Police Department Police Manual … Upon review of the video in this incident, Officer Knisley had control of Mrs. Hahn's right arm and Officer Valentine had control of Mrs. Hahn's left arm and at no time did the video depict Mrs. Hahn attempt to strike Officer Knisley with her fist at any time when Officer Knisley initially punched Mrs. Hahn at approximately 0:48 seconds of the video of this incident.

(NOL in Opp'n to Mot., Ex. 7, at 184.) Therefore, viewing the facts in the light most favorable to Plaintiff, a reasonable jury could conclude Officer Knisley used excessive force during the arrest. Because triable issues of fact exist, Officer Knisley is not entitled to summary judgment on this claim.

### d. Corporal Galanos

Defendants also move for summary judgment on the excessive force claim against Corporal Galanos, arguing Corporal Galanos did not use any force against Plaintiff. In the Ninth Circuit, however, a defendant may be held liable as a supervisor under § 1983 upon a showing of either "(1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). The requisite causal connection can be established by (1) the supervisor's "own culpable action or inaction in the training, supervision, or control of subordinates;" (2) "their acquiescence in the constitutional deprivation of which a complaint is made;" or (3) "for conduct that showed a reckless or callous indifference to the rights of others." *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000).

It is undisputed that Corporal Galanos was present at the scene of Plaintiff's arrest, was in a position to observe the arrest, and was the highest ranking officer until Sergeant Lowe arrived after Plaintiff was in custody. Based on this evidence, a reasonable jury could find that Corporal Galanos was aware of Officers Valentine and Knisley's alleged unconstitutional conduct, yet failed to exercise control over

his subordinate officers. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A supervisor is only liable for constitutional violations of his subordinates if [he] ... knew of the violations and failed to act to prevent them."); *Carrasco v. City of Vallejo*, No. CIV.S001968 WBS JFM, 2001 WL 34098655, at *7 (E.D. Cal. Sept. 6, 2001) ("Sergeant Mortenson's presence on the scene is sufficient to create a triable issue concerning his liability as a supervisor."). Accordingly, the officers' motion for summary judgment on the supervisory liability claim against Corporal Galanos is denied.

### 3. Qualified Immunity

Defendants contend Officers Valentine and Knisley are entitled to qualified immunity on the excessive force claim because an officer in their "position could reasonably believe that [their actions] were reasonable under the totality of the circumstances, and not a constitutional violation." (Officers' Mem. of P. & A. in Supp. of Mot. at 27–28.) Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "In determining whether an officer is entitled to qualified immunity, we consider (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *C.V. by & through Villegas v. City of Anaheim*, 823 F.3d 1252, 1255 (9th Cir. 2016) (quoting *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014)). A right is clearly established when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In other words, an officer's actions violate clearly established law when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Torres v. City of L.A.*, 548 F.3d 1197, 1211 (9th Cir. 2008).

The first inquiry is whether there has been a violation of a constitutional right. As discussed above, Plaintiff raises genuine disputes about the circumstances leading up to the arrest and the officers' use of force to effect the arrest. Therefore, viewing the facts in light most favorable to Plaintiff, a reasonable jury could find that the officers used an unreasonable amount of force to effect the arrest, and as a result, violated Plaintiff's Fourth Amendment rights.

The next inquiry is whether the right was clearly established on the date of the incident. "[T]he use of excessive force by officers in effecting an arrest was clearly proscribed by the Fourth Amendment at least as early as 1985." *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993). Indeed, "[i]t was clearly established at the time of the incident that striking and kneeing a person being arrested who was not physically resisting constituted excessive force." *Rice v. Murakami*, 671 F. App'x 472, 473 (9th Cir. 2016); *see Young v. Cty. of L.A.*, 655 F.3d 1156, 1168 (9th Cir. 2011) ("The principle that it is unreasonable to use significant force against a suspect who was suspected of a minor crime, posed no apparent threat to officer safety, and could be found not to have resisted arrest, was thus well-established in 2001"). Viewing the evidence in the light most favorable to Plaintiff, a jury could find that Plaintiff complied with the officers' orders, and did not resist arrest or pose a threat. A reasonable officer in Officers Valentine or Knisley's position would have known that striking and kicking the suspect to effect an arrest under such circumstances would violate the Fourth Amendment. *See Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003) (viewing the facts in light most favorable to plaintiff, the Court found it was objectively unreasonable when defendant "grabbed [plaintiff] by her arms, forcibly threw her to the ground, and, twisting her arms, handcuffed her … [when] [Plaintiff] did not pose a safety risk and made no attempt to [evade arrest]…. [and] [Defendant] was investigating … nonviolent offenses."). Consequently, Officers Valentine and Knisley are not entitled to qualified immunity. *See Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000) ("summary judgment

based on qualified immunity is improper if, under the plaintiff's version of the facts, and in light of the clearly established law, a reasonable officer could not have believed his conduct was lawful.").

## B. *Monell* Claim

In her second claim, Plaintiff alleges the City's established policies and customs violated her Fourth and Fourteenth Amendment rights. Plaintiff explains the City has the following unconstitutional policies and customs: (1) "deliberately indifferent training of its law enforcement officers in making lawful arrests," (2) "ratification of police misconduct," (3) "encouragement of arrests without probable cause," and (4) "failure to conduct adequate investigations of police misconduct such that future violations do not occur," (5) "retaliation against individuals who complain against Carlsbad Police Officers," and (6) "permitting and tolerating unlawful excessive force against the public." (Third Amended Complaint ("TAC") ¶¶ 14–15, 17.) The City moves for summary judgment, arguing Plaintiff is unable to establish the existence of any unconstitutional policy or custom.

### 1. Deliberately Indifferent Training

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). A plaintiff seeking to hold a city liable based on an alleged failure to train its police officers must show that "(1) he was deprived of a constitutional right, (2) the City had a training policy that amounts to deliberate indifference to the [constitutional] rights of the persons with whom [its police officers] are likely to come into contact; and (3) his constitutional injury would have been avoided had the City properly trained those officers." *Blankenhorn*, 485 F.3d at 484 (citing *Lee v. City of L.A.*, 250 F.3d 668, 681 (9th Cir. 2001)) (internal quotation marks omitted).

The City argues it is entitled to summary judgment because its training

– 14 –

policies related to making lawful arrests are adequate, and its officers completed extensive training in accordance with the the policies. Plaintiff does not contest the City's argument. According to the declaration of Lieutenant Kevin Lehan, the City's training policies adequately trained its deputies on the use of force and laws related to arrest.[6]  Lieutenant Lehan attested the policy and custom of the City's police department with respect to arrest and use of force is "to follow the law, Police Officers Standards and Training ("P.O.S.T.") Standards & Guidelines, and departmentally approved police officer training."  (Declaration of Kevin Lehan ("Lehan Decl.") ¶ 3.)

In particular, at the time of Plaintiff's arrest, the City's "Policy 300" provided guidelines on the reasonable use of force during arrests.  Policy 300 expressly incorporates California Penal Code § 835a in describing use of force to effect an arrest:

> Any peace officer who has reasonable cause to believe that the person to be arrested has committed a public offense may use reasonable force to effect the arrest, to prevent escape or to overcome resistance. A peace officer who makes or attempts to make an arrest need not retreat or desist from his efforts by reason of the resistance or threatened resistance of the person being arrested; nor shall such officer be deemed an aggressor or lose his right to self-defense by the use of reasonable force to effect the arrest or to prevent escape or to overcome resistance. (Penal Code § 835a).

(NOL in Supp. of Mot., Ex. 20 at 21.)  Regarding Policy 300, Plaintiff's police practices expert Scott Defoe testified this is a "standard use of force policy [implemented] throughout California" and opined the policy was adequate.  (*Id.*, Ex. 10 at 128.)  Mr. Defoe also opined the City's police department provide adequate training to its police officers on perishable skills.

Moreover, the City has presented evidence that all of the officers employed

---

[6] Lieutenant Lehan is an Arrest and Control instructor, who has trained the City's officers since 2006.  (Lehan Decl. ¶ 4.)

by its police department are graduates of police academies, where they are trained in subjects including arrest and control. The City's police department requires each officer "to undergo 724 hours of training during their first year … [and] to complete a minimum of 24 hours of training every two years in courses certified by P.O.S.T.[,]" which includes four hours of training in arrest and control procedures. (Lehan Decl. ¶ 5.) In addition to the P.O.S.T. training, each officer must complete "a two-hour Perishable Skills Program ("PSP") training specifically in the subject of arrest and control procedures" every quarter. (*Id.* ¶ 6.)

In opposition, Plaintiff has failed to come forward with any evidence regarding the alleged deliberately inadequate training of the City's officers. Because Plaintiff has failed to raise a genuine issue of material fact regarding the City's liability under *Monell* for inadequate training, the Court grants summary judgment in favor of the City with respect to this allegation. *See Waggy v. Spokane Cnty. Wash.*, 594 F.3d 707, 713 (9th Cir.2010) (upholding grant of summary judgment for county on plaintiff's Monell claims where plaintiff "point[ed] to no express county policy" and "provid[ed] no evidence showing even an inference that such a [policy] exists").

### 2.     Ratification of Police Misconduct

A municipality may be held liable for a constitutional violation under the theory of ratification "when the person causing the violation has 'final policy making authority.'" *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) (citations omitted). To establish ratification, a plaintiff must show "authorized policymakers" had "knowledge of the constitutional violation" and "approve[d] a subordinate's decision and the basis for it." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004) (quoting *Christie*, 176 F.3d at 1238). A plaintiff must present "evidence of a conscious, affirmative choice" to ratify a subordinate's conduct by an authorized policy maker. *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992). Therefore, "[a] mere failure to overrule a subordinate's actions, without more, is insufficient to

support a § 1983 claim." *Lytle*, 382 F.3d at 987.

An official may have been delegated final policymaking authority where "the official's discretionary decision is [not] 'constrained by policies not of that official's making' and ... [not] 'subject to review by the municipality's authorized policymakers.'" *Ulrich v. City and Cty of S.F.*, 308 F.3d 968, 986 (9th Cir. 2002) (quoting *Christie*, 176 F.3d at 1236–37); *see Lytle*, 382 F.3d at 983 (defining a final policymaker as an individual in a position of authority such that "a final decision by that person may appropriately be attributed to the [defendant public body].")). Whether a particular official has "final policymaking authority" is a question of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988).

In support of the ratification theory, Plaintiff relies solely on the deposition testimony of Lieutenant Lehan. Plaintiff contends Lieutenant Lehan is an official with final policymaking authority who ratified the officers' alleged use of excessive force against Plaintiff. The City argues Plaintiff has not established that it delegated any final policymaking authority to Lieutenant Lehan. Under California Government Code section 38630 the City's police department "is under the control of the chief of police," who has the final policymaking authority. Lieutenant Lehan's deposition testimony confirms that he is not the chief of the City's police department nor was he delegated with any final policymaking authority. Lieutenant Lehan, an instructor that trains officers on defense tactics, testified he did not implement the use of force policy, and in fact, he was even not aware "there was a policy in place that if there was a use of force, a written report was supposed to be submitted to Defensive Tactics[.]" (NOL in Opp'n to Mot., Ex. 6 at 171.) Indeed, he testified, "In 2013, I didn't have any access to our policy manual other than I would acknowledge I received the revised policy manual with all the other employees in the agency." (*Id.* at 163.) Accordingly, Plaintiff has failed to provide sufficient evidence to establish that Lieutenant Lehan is an official "responsible for establishing final policy with respect to the subject matter in question." *Pembaur*,

475 U.S. at 483–84.

Even if Lieutenant Lehan had "final policymaking authority," the City contends Plaintiff cannot establish that he ratified the officers' actions. The Court agrees. Plaintiff has not offered any basis for concluding that Lieutenant Lehan's deposition testimony amounts to affirmative approval of their alleged unconstitutional conduct. Lieutenant Lehan was deposed more than three years after the incident. When asked in retrospect whether, Officers Valentine and Knisley "exercised textbook policy and protocol according to Carlsbad," Lieutenant Lehan responded, "Absolutely. They performed as trained, as I would expect them to train and expect them to perform." (NOL in Opp'n to Mot, Ex. 6 at 168.) Lieutenant Lehan's statements during deposition do not constitute affirmative or deliberate conduct ratifying the officers' alleged unconstitutional conduct. *See Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395 (5th Cir. 2017) ("good faith statements made while defending complaints of constitutional violations by municipal employees do not demonstrate ratification."). Because Plaintiff has failed to raise a genuine issue of material fact regarding the City's liability under *Monell* for the theory of ratification, the Court grants summary judgment in favor of the City with respect to this allegation.

> **3. Customs of Arrests Without Probable Cause, Failure to Conduct Adequate Investigations of Police Misconduct, Retaliation against Individuals who Complain Against Officers, and Use of Unlawful Excessive Force Against the Public**

A municipality may be sued for constitutional deprivations caused by a government "custom," even when the custom has not been formally approved through official decision-making channels. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). A "custom" for purposes of municipal liability is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *Praprotnik*, 485 U.S. at 127. Proof of random acts or isolated

events is insufficient to establish custom. *Thompson v. City of L.A.*, 885 F.2d 1439, 1444 (9th Cir. 1989). But a plaintiff may prove "the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." *Gillette*, 979 F.2d at 1348; *see Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."). Once such a showing is made, a municipality may be liable for its custom "irrespective of whether official policy-makers had actual knowledge of the practice at issue." *Thompson*, 885 F.2d at 1444.

In the TAC, Plaintiff appears to allege general customs of arrests without probable cause, failure to conduct adequate investigations of police misconduct, retaliation against individuals who complain against the City's officers, and use of unlawful excessive force against the public. The City contends Plaintiff cannot establish the existence of the alleged customs based solely on a single occurrence. The Court agrees. Plaintiff has failed to put forth any evidence that would lead a reasonable jury to believe that the City has a custom of violating constitutional rights.[7] Instead, Plaintiff only presents evidence regarding a single incident in which her constitutional rights were allegedly violated. Accordingly, the Court grants summary judgment in favor of the City with respect to these allegations.

## C.    Bane Act Claim

In her third claim, Plaintiff alleges the officers' conduct interfered with her

---

[7] Moreover, Plaintiff's allegation that the City has a custom of retaliating against citizens who complain against its officers is contradicted by her own testimony. Plaintiff initially alleged Officer Valentine retaliated against her for filing a complaint against him with the City's police department. She later testified during deposition that she did not actually make the complaint.

"right to be secured in her person and free from use of excessive force," in violation of California Civil Code § 52.1 ("Bane Act"). (TAC ¶ 23.) The Bane Act establishes a private right of action for damages and other relief against a person who "interferes by threats, intimidation, or coercion," or attempts to so interfere, "with the exercise or enjoyment" of an individual's constitutional or other legal right. Cal. Civ. Code § 52.1. "[T]he elements of the excessive force claim under § 52.1 are the same as under § 1983." *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013).

Both the City and the officers move for summary judgment on grounds that the officers' use of force was reasonable, and even if it were not, Plaintiff cannot show a "separate intent or act of threat, intimindation, or coercion" independent from those inherent in the alleged constitutional violation. (Officers' Mem. of P. & A. in Supp. of Mot. at 29.) First, as discussed above, there remains genuine disputes of material fact that cannot be resolved on summary judgment as to whether Officers Valentine and Knisley's use of force was reasonable. Second, contrary to Defendants' argument, Plaintiff need not show threats, intimidation, or coercion independent from the coercion inherent in the use of force. *See*, *e.g.*, *Wynn v. S.D. Cty.*, No. 12CV3070 BTM-NLS, 2015 WL 472552, at *11 (S.D. Cal. Feb. 5, 2015); *Lopez v. City of Imperial*, No. 13-CV-00597-BAS WVG, 2015 WL 4077635, at *22 (S.D. Cal. July 2, 2015); *Estate of Lopez ex rel. Lopez v. City of S.D.*, No. 13CV2240-GPC-MDD, 2014 WL 7330874, at *15 (S.D. Cal. Dec. 18, 2014). Here, Plaintiff's Bane Act claim is premised on a violation of her Fourth Amendment right to be free from excessive force. Because Plaintiff's excessive force claim survives, so does her Bane Act claim. *See Lopez*, 2015 WL 4077635, at *22. Accordingly, Defendants' motions for summary judgment on the Bane Act claim are denied.

**D.    Negligence and Battery Claims**

In her fourth and fifth claims, Plaintiff alleges the officers were negligent in the manner in which they effected the arrest, and the amount of force used was excessive and constituted a battery. Plaintiff claims she sustained injuries and

– 20 –

damages as a result of the officers' conduct.  Both the state law claims for battery and negligence depend on whether the officers acted with reasonable force.  To prevail on a claim for negligence, "Plaintiffs must show that the Defendant officers acted unreasonably and that the unreasonable behavior harmed Plaintiffs." *Robinson v. City of S.D.*, 954 F. Supp. 2d 1010, 1027 (S.D. Cal. 2013) (citation omitted).  The Fourth Amendment reasonableness standard applies to claims that officers were negligent in using excessive force.  *See Young*, 655 F.3d at 1170 (citing *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1108–09 (Cal. Ct. App. 2004)).  Similarly, to prevail on a claim for battery, a plaintiff must show "an officer used unreasonable force against him to make a lawful arrest or detention." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001).  A state law battery claim is the equivalent of a federal claim of excessive force.  *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527 (Cal. Ct. App. 2009).

The officers contend they are entitled to summary judgment on both claims, arguing these claims fail for the same reasons as the excessive force claim.  As discussed, however, material factual disputes exist regarding the reasonableness of Officers Valentine and Knisley's use of force.  "[T]he fact that [a p]laintiff's § 1983 claims under the Fourth Amendment survive summary judgment also mandates that the assault and battery claims similarly survive." *Nelson v. City of Davis*, 709 F. Supp. 2d 978, 992 (E.D. Cal. 2010).  Therefore, Defendants are not entitled to summary judgment on these claims.

The City moves for summary judgment on the negligence claim, arguing California Government Code § 815(a) insulates it from liability for the officers' negligence.  Section 815(a) provides, "A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."  The City, however, ignores California Government Code § 815.2, which clarifies that a public entity faces *respondeat superior* liability for injuries caused by its employees, and is only immune from liability when the

individual employee is also immune.  Cal. Gov. Code § 815.2.  Because California denies immunity to police officers who use excessive force in arresting a suspect, the City is also denied immunity.  *See Robinson v. Solano Cty.*, 278 F.3d 1007, 1016 (9th Cir. 2002); *Blankenhorn*, 485 F.3d at 488 ("[Section 815.2] clearly allows for vicarious liability of a public entity when one of its police officers uses excessive force in making an arrest.").  Accordingly, the City's motion for summary judgment on the negligence and battery claims is denied.[8]

### E.    Punitive Damages

Plaintiff alleges she is entitled to punitive damages against the officers because they "acted with a conscious disregard of Plaintiff's rights … by intentional[ly] causing her injury … Such conduct constitutes malice, oppression[,] and/or fraud under California Civil Code Section 3294[.]"  (TAC ¶ 11; *see id.* ¶ 35.) Punitive damages are recoverable in an action under 42 U.S.C. § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).  Under California law, punitive damages are authorized if a plaintiff can show by clear and convincing evidence that a defendant acted with oppression, fraud, or malice.  Cal. Civ. Code § 3294(a).

The officers argue Plaintiff is not entitled to punitive damages because "there is no evidence of malice, oppression or reckless disregard toward Plaintiff." (Officers' Mem. of P. & A. in Supp. of Mot. at 31.)  The Court disagrees because there is sufficient evidence in the record to create a triable questions of fact regarding whether Defendants engaged in oppressive, fraudulent, or malicious conduct. Whether Plaintiffs are entitled to punitive damages against the individual officers is a question for the jury.  Accordingly, Defendants' motion for summary judgment on

---

[8] The City raises the same argument as the officers in moving for summary judgment on the battery claim.

. 15-cv-2007 DMS (BGS)

the issue of punitive damages is denied.

## III.

## CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment are granted in part and denied in part. Specifically, the City's motion is granted as to the *Monell* claim and denied as to the remaining claims. The individual Defendants' motion is (a) granted as to the unlawful arrest and the malicious prosecution claims, and all claims against Officers Karches and Seapker, and (b) denied as to the remaining claims.

At oral argument, the parties requested that certain pretrial deadlines be adjusted. Accordingly, the Court continues the following pretrial deadlines:

1. The deadline for the parties to file their Memoranda of Contentions of Fact and Law and take any other action required by Local Rule 16.1(f)(2) is continued to June 26, 2017;

2. The deadline for the parties to comply with the pre-trial disclosure requirements of Federal Rule of Civil Procedure 26(a)(3) is continued to June 26, 2017;

3. The deadline for counsel to meet and take the action required by Local Rule 16.1(f)(4) is continued to June 27, 2017;

4. The deadline for plaintiff's counsel to provide defense counsel with the proposed pretrial order for review and approval is continued to June 29, 2017; and

5. The Proposed Final Pretrial Conference Order, including objections to any other parties' Fed. R. Civ. P. 26(a)(3) Pretrial Disclosures shall be prepared, served, and filed with this Court by June 30, 2017, and shall be in the form prescribed in and comply with Local Rule 16.1(f)(6).

The final Pretrial Conference is continued to July 7, 2017 at 10:30 a.m. The trial is continued to July 31, 2017.

**IT IS SO ORDERED.**

Dated:  June 16, 2017

Hon. Dana M. Sabraw
United States District Judge